# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

TRAVIS VANTERPOOL,
    *Plaintiff*,

    v.

HARRIS *et al.*,
    *Defendants*.

No. 3:20-cv-0140 (JAM)

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Plaintiff Travis Vanterpool has filed *pro se* and *in forma pauperis* this civil rights action under 42 U.S.C. § 1983 against several officials of the Connecticut Department of Correction (DOC). He claims that when he was a pretrial detainee the defendants unlawfully designated him to the DOC's Security Risk Group (SRG) program and subjected him to unconstitutional conditions of confinement. The SRG program allows for detainees and sentenced inmates who are suspected of certain gang affiliations to be placed in more restrictive conditions of confinement to prevent the proliferation of gang organizations and activities in prison.[1]

The defendants have now moved for summary judgment. Because Vanterpool has not offered any evidence to contradict the defendants' version of the facts, and on those facts there is no basis for holding the defendants liable, I will grant the motion for summary judgment.

### BACKGROUND

Vanterpool filed this action in January 2020.[2] In September 2020, I entered an initial review order allowing Vanterpool's procedural and substantive due process claims under the

---

[1] *See* Connecticut State Department of Correction, Administrative Directive 6.14 (Security Risk Groups), available at https://portal.ct.gov/-/media/DOC/Pdf/Ad/ad0614pdf.pdf (last accessed February 10, 2022).

[2] Doc. #1 (complaint).

Fourteenth Amendment to proceed.[3] I found that Vanterpool had plausibly alleged a procedural due process violation based on his claim that he was placed in restrictive SRG housing without notice of the charge against him or any meaningful opportunity to challenge it.[4] I also found that Vanterpool had stated a plausible claim that certain restrictions of SRG confinement were not reasonably related to any legitimate government purpose.[5]

In May 2021, the defendants filed a motion for summary judgment accompanied by extensive evidentiary materials.[6] They seek summary judgment on two grounds: (1) that Vanterpool *did* receive notice and a hearing prior to his placement in the SRG program; and (2) that the restrictions in SRG housing are reasonable measures designed to maintain institutional security by preventing gangs from organizing within prison.[7]

### *The defendants' evidence*

According to the statement and evidentiary submissions filed by defendants, Vanterpool was admitted to Bridgeport Correctional Center (BCC) as a pretrial detainee on July 25, 2018.[8] On September 19, 2018, BCC Facility Intelligence Officer Vaughn Tardif discovered information on a social media account belonging to Vanterpool that indicated he was affiliated with a gang.[9] For example, Vanterpool posted photographs of himself using a distinctive hand sign and various code phrases that indicated membership in the gang.[10]

Officer Tardif brought this information to the attention of BCC Administrative and Intelligence Supervisor Durant, who reviewed it and authorized Tardif to forward it to the

---

[3] Doc. #13.
[4] *Id.* at 6-8.
[5] *Id.* at 8-10.
[6] Doc. #32.
[7] Doc. #32-1 at 7-11.
[8] Doc. #32-2 at 1-2 (¶¶ 1, 5).
[9] *Id.* at 10 (¶¶ 18-20).
[10] Doc. #32-4 at 145 (Tardif incident report).

centralized Special Intelligence Unit, then under the supervision of John Aldi.[11] After receiving approval from Aldi, on September 24, 2018, Tardif summoned Vanterpool to an interview to discuss the gang-related information on his social media account.[12] At the interview, which Officer Florencio Rivera III also attended, Vanterpool initially denied gang involvement, but after being shown the information on his social media account he admitted he was a gang member.[13] Durant then met with Vanterpool to inform him about the SRG designation process, and Vanterpool separately admitted to Durant that he was a gang member.[14] Durant instructed Tardif and Rivera III to place Vanterpool in restrictive housing because his gang affiliation made it unsafe for him to be housed with the general prison population at BCC.[15]

On September 26, 2018, BCC Disciplinary Report Investigator Ojay Harris met with Vanterpool to notify him of his upcoming hearing on SRG placement based on his admission to gang membership and the evidence on his social media account.[16] Vanterpool was informed of his due process rights, including representation by an advocate at a hearing where he could contest the charge against him and his right to an appeal from the hearing officer's decision.[17] Vanterpool declined the appointment of an advocate to represent him.[18]

At the hearing on September 27, 2018, Vanterpool again admitted that he was a gang member and that he was responsible for the gang-related social media content discovered by Tardif.[19] The hearing officer found that Vanterpool was involved in a gang and posed a threat to prison safety and security if housed in the general population, and therefore concluded that he

---

[11] Doc. #32-2 at 10-11 (¶¶ 21-24).
[12] *Id*. at 11 (¶ 25).
[13] *Id*. at 11-12 (¶¶ 25-28).
[14] *Id*. at 12 (¶¶ 29-30).
[15] *Ibid*. (¶¶ 31-32).
[16] *Id*. at 13-14 (¶¶ 34, 36, 38).
[17] *Ibid*. (¶ 35).
[18] *Id*. at 14 (¶¶ 38); Doc. #32-4 at 141 (initialed form stating that Vanterpool declined an advocate).
[19] Doc. #32-2 at 14 (¶¶ 39-41).

should be placed in the SRG program.[20] Vanterpool received a form showing the grounds for his SRG designation.[21] He was placed in Phase 3 of the 5-Phase SRG program and transferred to Corrigan-Radgowski Correctional Institution (Corrigan-Radgowski) on November 7, 2018.[22]

At Corrigan-Radgowski, SRG Phase 3 inmates have heat, electricity, medical care, mental healthcare, food, cleaning supplies on weekends to clean their cells, and the ability to participate in exercise either in their cells or at recreation.[23] To prevent gangs from organizing, the DOC limits Phase 3 inmates' out-of-cell time, phone calls, and visitation with non-family members, and conducts routine searches of their cells for weapons, gang materials, and other contraband.[24] Other restrictions, such as banning televisions in the cells of inmates in Phases 1 and 2, are designed to incentivize progression through the SRG program.[25] Overall, the SRG restrictions "attempt to address the complexities of DOC's gang problem and promote[] an environment where an inmate can safety disassociate from a gang while in custody."[26]

In October 2019, Vanterpool filed a grievance alleging that his SRG designation was the result of an unfair hearing process.[27] District Administrator William Mulligan rejected the grievance.[28] Captain Daniel Papoosha denied a similar grievance from Vanterpool in December 2019.[29] Despite several setbacks, Vanterpool completed the SRG program and renounced affiliation with a gang in June 2020.[30]

---

[20] *Ibid.* (¶¶ 41-42).
[21] *Ibid.* (¶ 43).
[22] *Id*. at 15 (¶ 46).
[23] *Ibid.* (¶¶ 48-49).
[24] *Id*. at 15-17 (¶¶ 50-54).
[25] *Id*. at 17 (¶ 55).
[26] *Id*. at 18 (¶ 59).
[27] *Id*. at 19 (¶ 63).
[28] *Ibid.* (¶ 64); Doc. #32-11 at 2 (denial letter).
[29] Doc. 32-2 at 19 (¶¶ 65-66); Doc. #32-4 at 95 (denial letter).
[30] Doc. 32-2 at 19-20 (¶¶ 68-69).

*Vanterpool's response*

In response to the defendants' Rule 56(a) statement, Vanterpool filed a "Rule 56(b) statement" admitting some facts in the defendants' statement and denying or disclaiming knowledge of others.[31] Vanterpool's response purports to identify several genuine factual disputes precluding summary judgment. First, he argues that the SRG designation process determines gang membership in a racially discriminatory manner that denies inmates like him due process.[32] This allegation of racial discrimination does not appear in the complaint. Second, he claims that the defendants coerced him into admitting gang membership.[33] This allegation of coercion also does not appear in the complaint. Third, he contends that the evidence on his social media account did not in fact show that he was a gang member.[34]

## DISCUSSION

Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proved at trial—to allow a reasonable factfinder to decide the case in favor of the opposing party. My role at summary judgment is not to judge the credibility of witnesses or to resolve close contested issues of fact but solely to decide if there are enough facts that remain in dispute to warrant a trial. *See generally Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (*per curiam*); *Pollard v. N.Y. Methodist Hosp.*, 861 F.3d 374, 378 (2d Cir. 2017).

---

[31] Doc. #34.
[32] *Id*. at 1, 4.
[33] *Id*. at 2-3.
[34] *Id*. at 2.

This Court's local rules require any party that moves for summary judgment to file a statement of undisputed material facts along with supporting evidence. *See* D. Conn. L. Civ. R. 56(a)(1). The Court may accept as true those facts that are set forth in a statement of material facts and that are supported by evidence if the non-moving party fails to dispute such facts by means of filing a statement of material facts in response. *See ibid*.

The problem for Vanterpool is that his response to the motion for summary judgment failed to include a Rule 56(a) statement of material facts and a supporting affidavit or any other admissible evidence. *See Jackson v. Federal Exp.*, 766 F.3d 189, 194 (2d Cir. 2014) (warning that while the "non-moving party need not respond to the motion" for summary judgment, "a non-response runs the risk of unresponded-to statements of undisputed facts … being deemed admitted"). Although Vanterpool filed a verified complaint in this action, that does not earn him a "special pass" to avoid Rule 56. *Grimes v. McDonald*, 2021 WL 3773327, at *2 (D. Conn. 2021). Even for a *pro se* plaintiff, such litigation rules "are not optional." *Id*. at *1.

I will not exercise my discretion to overlook Vanterpool's failure to comply with local court rules. The defendants sent Vanterpool a notice pursuant to Local Rule 56(b) specifically informing him how to respond to their motion.[35] The notice explained that under the Court's local rules, if Vanterpool wished to dispute any facts in the statement, he needed to "file evidence, such as one or more affidavits disputing the movant's version of the facts," and that if he "fail[ed] to comply with these instructions and to submit evidence contradicting the movant's version of the facts, judgment may be entered against you."[36] Vanterpool's response demonstrates that he received the defendants' summary judgment motion but failed to heed the Rule 56(b) notice.

---

[35] Doc. #32-12.
[36] *Id*. at 2.

Because Vanterpool has ignored Rule 56, I will credit the defendants' version of the facts, which is well-supported by the evidence they have submitted. In light of these facts, it is evident to me that there is no genuine fact issue to sustain Vanterpool's Fourteenth Amendment claims.

### Procedural due process

Vanterpool's procedural due process claim cannot succeed because, contrary to the allegations in his complaint, he indeed received "notice of the charges against him and an opportunity to present his views" before being placed in the SRG program. *Benjamin v. Fraser*, 264 F.3d 175, 190 (2d Cir. 2001). Moreover, his SRG designation hearing was held within three days of his initial administrative segregation, such that he "received the requisite minimal procedures within a reasonable time of his initial confinement." *Scozzari v. Santiago*, 2019 WL 6696091, at *5 (D. Conn. 2019) (procedural challenge to SRG designation unlikely to succeed where detainee received notice of hearing one day after being placed in administrative segregation). Vanterpool has not offered any evidence that his placement in the SRG program was disciplinary in nature or tainted by racial discrimination, and the uncontested record shows instead that the defendants identified him as a security risk due to his gang affiliation. While Vanterpool now complains that he did not have an advocate to represent him at the hearing and that the defendants coerced him into pleading guilty, it was Vanterpool who declined to have an advocate represent him and in fact pleaded guilty on multiple occasions in the absence of any kind of coercive pressure. His complaint did not allege that he was coerced into pleading guilty.

### Substantive due process

Vanterpool's substantive due process claim similarly lacks merit. The Second Circuit has made clear that administrative segregation measures do not violate substantive due process

"where prison officials subject[] pretrial detainees to such measures in response to specific evidence that those detainees posed a risk to institutional security, and where the measures were not excessive in relation to that purpose." *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 55–56 (2d Cir. 2017). First, Vanterpool received individualized consideration of his risk to institutional security when the hearing officer determined that he should be placed in the SRG program based on specific evidence of his gang membership, including his social media postings and multiple confessions. *See Wilson v. Santiago*, 2020 WL 5947322, at *4 (D. Conn. 2020) (dismissing detainee's substantive due process claim where hearing officer relied on "individualized consideration of social media postings that suggested [his] gang affiliation").

Second, the SRG restrictions Vanterpool challenges are reasonably related to the DOC's legitimate governmental objectives of "maintaining institutional security and preserving internal order and discipline." *Bell v. Wolfish*, 441 U.S. 520, 547 (1970). As the Second Circuit has instructed, courts should generally be "highly deferential to judgments about the conditions of confinement necessary to protect inmates and staff, and the public outside the facility, from particularly dangerous individuals." *Almighty Supreme Born Allah*, 876 F.3d at 58. Here, the defendants' uncontradicted submissions demonstrate that the restrictive conditions of the SRG program—including limits on phone calls, commissary spending, colored clothing, access to general programming, meals outside the cell, and visits from non-family members—serve to "prevent gangs from organizing, recruiting, banding together, or carrying out illegal activities while inmates are in [DOC] custody for [the] safety and security of all."[37] Absent such restrictions on communication and out-of-cell activities, gangs could "continue their activities and become more powerful" in prison by "organizing and planning fights, [committing] assaults

---

[37] Doc. #32-2 at 3-9 (¶¶ 11-12).

on staff, conveying contraband, reorganizing gang structure, holding votes on gang leadership roles, recruiting new members, passing along gang knowledge, and teaching gang code."[38] There is no genuine dispute that the SRG restrictions Vanterpool challenges are reasonably related to the DOC's legitimate goals of protecting institutional security and preventing gang activity in prison. *See Wilkinson v. Austin*, 545 U.S. 209, 227 (2005) (recognizing legitimate government interest in "[p]rison security, imperiled by the brutal reality of prison gangs" that "seek nothing less than to control prison life and to extend their power outside prison walls").

Moreover, Vanterpool has not shown the personal involvement of any of the defendants in designing or imposing the challenged restrictions, as required for individual liability under § 1983. *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020); *Wilson*, 2020 WL 5947322, at *5.

## CONCLUSION

For the reasons set forth above, the Court GRANTS the defendants' motion for summary judgment. The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 18th day of February 2022.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[38] *Id*. at 16 (¶ 51).